## UNION DAIRY CO. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. February 20, 1918.)

### No. 2534.

1. FOOD ⊙⟞¼ New, vol. 15 Key-No. Series—FOOD AND DRUG ACT—VIOLATION.
    Under Food and Drug Act (Act June 30, 1906, c. 3915) §§ 2, 6, 9, 34 Stat. 768 (Comp. St. 1916, §§ 8718, 8722, 8725), respectively declaring that the introduction into any state or territory from any other state or territory of any article of food or drugs which is adulterated and misbranded is prohibited, that the term "food" shall include all articles used for food, drink, confectionery, or condiment by man or other animals, and that no dealer shall be prosecuted when he can establish a guaranty signed by the wholesaler, manufacturer, or other party residing in the United States, from whom he purchased such article, that the same was not adulterated or misbranded, a dairy company; which shipped from its receiving plant in Illinois to Missouri milk, which was adulterated by the addition of water and which contained decomposed animal matter,

cannot defeat a prosecution on the ground that the milk was to be treated in Missouri, and was not an article of food until after treatment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Food.]

2. Food ☞21—"Adulteration"—Evidence—Judicial Notice.

In view of Food and Drug Act, § 7 (Comp. St. 1916, § 8723), declaring that an article shall be deemed to be adulterated if any substance has been mixed with it, so as to reduce or lower or injuriously affect its quality or strength, it is unnecessary, in a prosecution for the interstate transportation of milk adulterated with water, for the court to receive evidence that the addition of water injuriously affected the quality or strength of the milk.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adulteration.]

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

The Union Dairy Company, a corporation, was convicted of violating the Food and Drug Act, and it brings error. Affirmed.

Writ of error to review judgment in favor of the government and against plaintiff in error for violation of Food and Drug Act. Plaintiff in error is charged with having shipped 75 cans of milk from Troy, Ill., to itself at St. Louis, Mo., which milk was adulterated through the addition of water, and it was further charged that "filth, putrid and decomposed animal substance," was found therein.

L. W. Holder, of Chicago, Ill., for plaintiff in error.

John E. Dougherty, of Peoria, Ill., for the United States.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. [1] Plaintiff in error contends that it was shipping the milk from a receiving station in Illinois to itself in Missouri, there to be treated, impurities removed, and the milk standardized; that while in transit it was not an article of food such as was defined by the Food and Drug Act, and did not become such an article of food until after treatment. Were we to adopt this conclusion, it would do violence to the plain language of section 2 of the act under which prosecution is brought. The first sentence of section 2 reads:

"The introduction into any state or territory or the District of Columbia, from any other state or territory or the District of Columbia, or from any foreign country, or shipment to any foreign country of any article of food or drugs which is adulterated or misbranded, within the meaning of this act, is hereby prohibited."

Section 6 of the act provides:

"The term 'food' as used herein, shall include all articles used for food, drink, confectionery, or condiment by man or other animals whether simple, mixed, or compound."

Our conclusion is strengthened by another section of the act. Section 9 provides:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"No dealer shall be prosecuted under the provisions of this act, when he can establish a guarantee signed by the wholesaler, jobber, manufacturer or other party, residing in the United States, from whom he purchased such articles, to the effect that the same is not adulterated or misbranded within the meaning of this act, designating it."

In Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, the court said:

"Transportation in interstate commerce is forbidden to them [decayed eggs], and in a sense they are made culpable as well as their shipper. It is clearly the purpose of the statute that they shall not be stealthily put into interstate commerce and be stealthily taken out again * * * at their destination and be given asylum in the mass of property in the state."

In passing this act, Congress was endeavoring to protect the public by keeping out of commerce certain illicit articles, debased by adulteration, and it would be an unjustifiable construction of the act to make liability turn upon a difference in identity of consignor and consignee, or the secret intent with which a shipper made the shipment.

[2] Plaintiff in error further contends that the evidence fails to show any adulteration at all, or such an adulteration as injured the milk as food. We have carefully examined the record, and, giving the stipulation of the parties the fair meaning which we believe was intended, the adulteration was clearly established. It was unnecessary for the court to receive evidence to establish the fact that the addition of water to milk injuriously affected the quality or strength of milk. See section 7 of the act.

Judgment is affirmed.